**INGERSOLL–RAND COMPANY, Appellant**

v.

**UNITED STATES of America.**

**No. 85–5011.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 24, 1985.

Decided Dec. 31, 1985.

Jack P. Janetatos, with whom Arthur L. George, Washington, D.C., was on brief, for appellant.

Deborah A. Robinson, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before GINSBURG and BORK, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

In this case, appellant, Ingersoll-Rand Company ("I–R"), sued the United States of America, alleging that the government's decision to terminate I–R's contract to supply air compressors and to resolicit bids for the contract was arbitrary and capricious and contrary to several federal acquisition regulations. The District Court held that provisions of the Contract Disputes Act[1]

1. In 28 U.S.C. § 1346(a)(2) (1982), Congress pro-  vided:

forbid the exercise of subject matter jurisdiction in this case. *See Ingersoll-Rand Co. v. United States ("Order")*, No. 84-3293 (D.D.C. Dec. 20, 1984) (order granting defendant's motion to dismiss), Appendix ("App.") at 184-93. We agree and therefore affirm, but remand to allow the District Court to consider whether the case should be transferred to the Claims Court.

## I. BACKGROUND

On August 12, 1983, the Warner-Robins Air Logistics Command of the Department of the Air Force issued a solicitation for the procurement of air compressors. The Air Force solicited and negotiated technical proposals and then solicited sealed bids from bidders who had submitted acceptable technical proposals. I-R was the lowest bidder, and was awarded the contract on September 27, 1984.

On October 16, 1984, the Air Force terminated the contract with I-R, for the convenience of the Government, pursuant to Federal Acquisition Regulation ("FAR") 52.-249-2(a),[2] which was incorporated into the contract. The Air Force simultaneously resolicited bids for the sale of the compressors, amending a clause in the original Request for Proposals ("RFP") to clarify that the Air Force would acquire unlimited rights to all technical data used by the contractor. Thereafter, on October 22, 1984, the Air Force indefinitely postponed the deadline for submission of new bids.

On October 26, 1984, I-R filed its complaint in the District Court, requesting a temporary restraining order and preliminary and permanent injunctions. I-R asserted, *inter alia*, that there was no ambiguity in the original RFP, and that the decision to terminate the contract was "arbitrary, capricious, an abuse of discretion, and lacked a rational basis." Complaint at 6-7, App. at 6-7. After a status conference held on October 26, I-R withdrew its request for a temporary restraining order, based on the government's promise that it would give five days notice to I-R before it began resoliciting bids under the new RFP.

On November 29, 1984, the Air Force notified I-R of its intention to proceed with solicitation of bids under the revised RFP. I-R renewed its request for a temporary restraining order. On December 4, 1984, the District Court denied I-R's motion for temporary relief. *Ingersoll-Rand Co. v. United States*, No. 84-3293 (D.D.C. Dec. 4, 1984) (order denying motion for temporary restraining order), App. at 177-83.

On December 20, 1984, the District Court granted the government's motion to dismiss I-R's complaint. The government raised two issues in that motion. First, the government argued that I-R's claim presented an issue arising prior to the award of the contract. According to the

[T]he district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States ... which are subject to section 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. In Section 8(g)(1) of the Contract Disputes Act, now 41 U.S.C. § 607(g)(1) (1982), Congress provided:

The decision of an agency board of contract appeals shall be final, except that—
(A) a contractor may appeal such a decision to the United States Court of Appeals for the Federal Circuit within one hundred twenty days of receipt of a copy of such decision, or
(B) the agency head, if he determines that an appeal should be taken, and with the prior approval of the Attorney General, transmits the decision of the board of contract appeals to the Court of Appeals for the Federal Circuit

for judicial review under section 1295 of title 28, within one hundred and twenty days from the date of the agency's receipt of a copy of the board's decision.
In Section 10(a)(1) of the Contract Disputes Act, now 41 U.S.C. § 609(a)(1) (1982), Congress further provided:

[A] contractor may bring an action directly on the claim in the United States Claims Court, notwithstanding any contract provision, regulation, or rule of law to the contrary.

2. In accordance with FAR 52.249-2(a), 48 C.F.R. § 52.249-2(a) (1984), government contracts may provide:

The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest.

government, 28 U.S.C. § 1491(a)(3) (1982) [3] establishes the Claims Court as the sole forum for the exercise of jurisdiction in such cases. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss at 2–3, App. at 38–39. The District Court rejected this contention, holding that "the postaward aspects of this case dominate the preaward elements and Section 1491(a)(3) ... does not come into play." Order at 5, App. at 188. The government does not challenge this ruling, and we have no occasion to address the issue further.

As an alternative basis for dismissing the complaint, the government alleged that the Claims Court had exclusive jurisdiction over the case because of the Contract Disputes Act ("CDA"). Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss at 2, App. at 58; *see supra* note 1 (relevant text of CDA). The District Court held that the CDA applies because "plaintiff here is attempting to protect contractual rather than proprietary rights," Order at 9, App. at 192, and because "plaintiff here seeks contract reinstatement, a traditional equitable remedy for the identical contract rights redressable by money damages under the CDA." *Id.* The remainder of our opinion focuses on the issues surrounding this holding.

## II. ANALYSIS

### A. Categorizing Disputes Under the Contract Disputes Act

The essential question in this case is whether appellant's claim is "founded upon an[ ] express or implied contract with the United States." 28 U.S.C. § 1346(a)(2) (1982). If it is, then the CDA limits adjudication of this dispute to the Claims Court. *See* S.Rep. No. 1118, 95th Cong. 2d Sess. 10 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5235, 5244 (indicating that, under Section 10(a) of the CDA, district court

jurisdiction is eliminated from government contract claims).

The starting point for determining whether appellant's claim is founded upon the contract must be this court's opinion in *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C.Cir.1982). In *Megapulse*, the plaintiff, a government contractor, sought to enjoin the release of technical data acquired by the Coast Guard in conjunction with a contract for the sale of long-range navigation equipment. The plaintiff alleged that this proposed release of data would violate the Trade Secrets Act. The District Court, however, held that it had no subject matter jurisdiction over the claim, relying on 28 U.S.C. § 1346(a). This court reversed.

Essential to this court's holding that subject matter jurisdiction existed in *Megapulse* was a framework for determining whether an action is founded upon a contract: "[t]he classification of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate)." *Id.* at 968. As to the source of the rights at stake in the *Megapulse* case, the court noted:

> [Plaintiff] does not claim a breach of contract, it has limited its request for relief to only six documents 'reflecting the essence of the proprietary technology developed ... *prior* to the parties' first contract,' it seeks no monetary damages against the United States, and its claim is not properly characterized as one for specific performance. Appellant's position is ultimately based, not on breach of contract, but on an alleged governmental infringement of property rights and violation of the Trade Secrets Act.

*Id.* at 969 (footnotes omitted). As to whether the relief sought was essentially contractual, the court recognized that the

---

**3.** In 28 U.S.C. § 1491(a)(3) (1982), Congress provided, in pertinent part:

   To afford complete relief on any contract claim brought before the contract is awarded, the court [the United States Claims Court] shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief.

question "may be resolved only against the facts of each case." *Id.* at 970. The government asserted that the relief requested (an injunction against release of the proprietary data) was based both on an alleged violation of the Trade Secrets Act and a breach of contract. The court concluded, however, that "the mere fact that an injunction would require the same governmental restraint that specific (non)performance might require in a contract setting is an insufficient basis to deny a district court the jurisdiction otherwise available...." *Id.* at 971. In addition, the court noted that the ordinary contractual remedy of damages would be an inadequate substitute for an injunction against release of the information. *Id.* at 970.

We employ the framework developed in *Megapulse* to resolve the question whether I–R's claim is founded upon the contract.

### B. *Source of the Right at Stake*

Ingersoll-Rand did not explicitly style its complaint as an action for breach of contract. I–R's complaint breaks down into two essential components: wrongful termination of the contract and unlawful resolicitation of the contract. I–R argued before the District Court that the termination of the contract violated two federal regulations. First, I–R asserted that the termination violated FAR § 14.404–1(a)(1), which allows the government to cancel a contract after it has taken bids only upon a showing of a cogent and compelling reason.[4] Memorandum in Support of Plaintiff's Application for Temporary Restraining Order and

Motion for Injunction at 6, App. at 106. Second, I–R argued that the termination violated FAR 14.404–1(a)(2), which instructs the government to attempt to resolve ambiguities in a RFP prior to the opening of bids.[5] Memorandum at 11–12, App. at 11–12. As to the proposed resolicitation, I–R argued that it constituted an "auction" in violation of FAR 15.610(d),[6] because I–R's bid on the original solicitation was already known and could be used by other bidders as a gauge for their bids on the resolicitation. Memorandum at 15–16, App. at 115–16. These violations of government regulations, according to I–R, also contravened the Administrative Procedure Act's prohibitions against arbitrary and capricious decisions.[7] Complaint at 6–7, App. at 6–7.

■ Despite I–R's efforts to cast its complaint otherwise, we conclude that the essential rights at stake here are contractual. We begin with the well-accepted proposition that a plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions rather than breach of contract. *See Megapulse*, 672 F.2d at 967 *International Engineering Co. v. Richardson*, 512 F.2d 573, 580 (D.C.Cir.1975), *cert. denied*, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976); *Warner v. Cox*, 487 F.2d 1301, 1306 (5th Cir.1974). That I–R's complaint nowhere mentions breach of contract, therefore, cannot alone suffice to establish jurisdiction in the District Court. Instead, as did the court in *Megapulse*, we

---

4. FAR 14.404–1(a)(1), 48 C.F.R. § 14.404–1(a)(1) (1984), provides: "Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation."

5. FAR 14.404–1(a)(2), 48 C.F.R. § 14.404–1(a)(2) (1984), provides: "Every effort shall be made to anticipate changes in a requirement before the date of opening and to notify all prospective bidders of any resulting modification or cancellation. This will permit bidders to change their bids and prevent unnecessary exposure of bid prices."

6. FAR 15.610(d), 48 C.F.R. 15.610(d) (1984), provides: "The contracting officer and other Government personnel involved shall not engage in—... (3) Auction techniques, such as— ... (ii) Advising an offeror of its price standing relative to another offeror ...; and (iii) Otherwise furnishing information about other offerors' prices."

7. The Administrative Procedure Act requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (1982).

examine other factors to determine whether the action "sound[s] genuinely in contract [or is] based on truly independent legal grounds." *Megapulse*, 672 F.2d at 969–70. We find three essential aspects of I–R's claims conclusive on this question.

■ First, it is possible to conceive of this dispute as entirely contained within the terms of the contract. The contract included a termination-for-convenience clause. *See supra* note 2. The Air Force invoked this clause in its decision to terminate the original contract and solicit new bids. Complaint at 5, App. at 5. I–R could thus challenge the termination based solely on contract principles. *See Torncello v. United States*, 681 F.2d 756, 772 (Ct.Cl. 1982) (holding that Government may not use termination-for-convenience clause to dishonor contract with impunity). The question presented by the complaint could be phrased as whether the contract forbids termination under these conditions. That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations. Nor does plaintiff's decision to allege only a violation of the regulations change the essential character of the action. *See J.C. Products, Inc. v. United States*, 608 F.Supp. 92, 94 (W.D.Mich.1984) (where plaintiff was awarded contract and government terminated for convenience, cause of action is on the contract despite plaintiff's allegations of statutory and constitutional violations); *Management Science America, Inc. v. Pierce*, 598 F.Supp. 223, 226 (N.D.Ga.1984) ("If the mere allegation of procurement violations were to bring claims of this type within the jurisdiction of the district court, Congress' intent to limit contract remedies against the government to damages in the Claims Court would be effectively circumvented."); *Group Health Inc. v. Schweiker*, 549

F.Supp. 135, 139 (S.D.Fla.1982) (where government refuses to renew contract for provision of Medicare services, claims are essentially contractual despite alleged violation of statutes and regulations); *Metadure Corp. v. United States*, 490 F.Supp. 1368, 1372–73 (S.D.N.Y.1980) (where government contractor alleges that the government retained in its files a memorandum derogating contractor, claim is essentially contractual since it relates, *inter alia*, to improper declarations of contractual defaults).

Second, the issues raised by plaintiff's complaint are within the unique expertise of the Court of Claims. The substance of I–R's complaint is that the Air Force had no good reason to terminate the contract and begin resolicitation. This complaint, unlike a complaint based, for example, on a violation of the civil rights of the contractor,[8] calls for knowledge of the government contracting process. In these circumstances, we must implement the congressional intent to provide a single, uniquely qualified forum for the resolution of contractual disputes. *See Prefab Products v. U.S. Postal Service*, 600 F.Supp. 89, 91 (S.D.Fla. 1984) (indicating that the goal of the Contract Disputes Act was to provide a comprehensive system for the adjudication of contract claims against the government); *S.J. Groves & Sons Co. v. United States*, 495 F.Supp. 201, 209 (D.Colo.1980) (indicating that expertise of Court of Claims is to be considered in determining appropriate forum for resolution of claim).

Finally, despite I–R's characterization, *see* Br. for Appellant at 34, we find that I–R is not a "frustrated bidder." I–R asserts that its action is no different from a bid protest action. *See Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir.1970). In *Scanwell*, the plaintiff was the second lowest bidder on a contract to

---

8. I–R claims that its complaint is essentially no different than that of a minority contractor whose contract with the government is terminated allegedly for the convenience of the government but, in actuality, on the basis of race. Reply Br. for Appellant at 7. We need not determine the appropriate resolution of

such a case, since I–R's claim of procedural violations is easily distinguishable from that hypothetical case. *See J & L Janitorial Services, Inc. v. United States*, 231 Ct.Cl. 837, 838 (1982) (holding that claims of racial discrimination in contracting are within jurisdiction of the district courts).

supply instrument landing systems to the Federal Aviation Administration. The plaintiff alleged that the winning bidder's bid was non-responsive and that the contract therefore should have been awarded to the plaintiff. This court held that the plaintiff had standing to bring suit for a declaratory judgment to determine the validity of the agency action in awarding the contract to the winning bidder. Although it is clear that, in enacting the CDA, Congress did not intend to eliminate *Scanwell* actions in the district courts, *see* H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981); S.Rep. No. 275, 97th Cong., 2d Sess. 22–23 (1982), U.S.Code Cong. & Admin.News 1982, pp. 11, 32, 33, I–R's action is simply not the same as that in *Scanwell.* I–R is not a disappointed bidder who seeks to void the award of a contract to another; instead, it complains of wrongful termination of its own contract with the government.[9] *See Management Science America, Inc. v. Pierce,* 598 F.Supp. 223, 227 (N.D.Ga.1984) ("The distinguishing feature of the frustrated bidder ... is that he has no contract upon which to sue the government.").

## C. *Adequacy of remedy*

The *Megapulse* court also suggested that the classification of a particular action depended in part on what type of relief was sought and what type of relief was appro-

priate. *Megapulse,* 672 F.2d at 968. I–R has sought only injunctive relief (rather than the typical contractual damages remedy). Thus, it argues that, under the CDA, it can only receive termination costs, which are an inadequate remedy for the wrong suffered. Br. for Appellant at 32. We find, however, that neither of these factors conclusively establishes this action as one appropriate for consideration by the District Court rather than the Claims Court.

We observe, first, that a plaintiff may not sidestep the restrictions of the CDA merely by avoiding a request for damages. *See, e.g., State of Tennessee ex rel. Leech v. Dole,* 749 F.2d 331, 336 (6th Cir.1984) ("it is clear that a claimant may not avoid the exclusive jurisdiction of the Court of Claims merely by framing a complaint to seek nonmonetary relief when the result would be the equivalent of obtaining money damages"), *cert. denied,* — U.S. —, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985); *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir.1983). That I–R's complaint seeks only a declaratory and injunctive order, *see* Complaint at 8, App. at 8, therefore, does not decide the issue.

Second, we find that the essence of I–R's claim is a request for specific performance of the original contract. From the outset, I–R has requested an order reinstating the

---

9. Appellant's citation to *Vibra-Tech Engineers, Inc. v. United States,* 567 F.Supp. 484 (D.Colo. 1983) does not dissuade us from this view. In *Vibra-Tech,* the plaintiff was awarded a contract to provide geological information. Thereafter, the government terminated the contract for its convenience. Despite a challenge from the government, the district court held that the Contract Disputes Act did not apply. *Id.* at 487. As did the court in *Management Science America, Inc. v. Pierce,* 598 F.Supp. 223, 230 (N.D.Ga. 1984), we find the *Vibra-Tech* holding unpersuasive.

First, the *Vibra-Tech* court assumed, without explanation, that a termination-for-convenience case is equivalent to a frustrated bidder case. The precedents cited by the court, *Gould v. Chafee,* 450 F.2d 667 (D.C.Cir.1971); *Aero Corp. v. Department of the Navy,* 540 F.Supp. 180 (D.D.C.1982); and *Collins & Co., General Contractors v. Claytor,* 476 F.Supp. 407 (N.D.Ga. 1979), all involved frustrated bidders.

Second, in reaching its conclusion, the *Vibra-Tech* court ignored its own precedent. In *S.J. Groves & Sons Co. v. United States,* 495 F.Supp. 201 (D.Colo.1980), plaintiff was awarded a contract to construct a pipeline. The government directed the plaintiff to perform corrective construction on the pipeline and the plaintiff brought suit to prevent, *inter alia,* the government from declaring it in breach of contract for failure to perform the corrective work. Despite the contractor's claim that its complaint arose under federal law and regulations, the court held that the claim was essentially grounded in contract and thus was within the exclusive jurisdiction of the Claims Court. *Id.* at 207–08. Had the *Vibra-Tech* court followed the *Groves* court's distinction between actions based upon a contract and actions based upon federal law and regulations, it would likely have concluded that an action involving termination of a contract for the convenience of the government is an action within the jurisdiction of the Claims Court.

original award of the contract. *See id.* (requesting an order directing the Air Force to reinstitute the award of the contract to I–R). Such a request may amount to a request for specific performance. *See, e.g., J.C. Products, Inc. v. United States,* 608 F.Supp. 92, 96 (W.D.Mich.1984) (where practical result of granting plaintiff's request for declaratory and injunctive relief would be reinstatement of terminated contracts, relief would require government to pay contract price); *Management Science America, Inc. v. Pierce,* 598 F.Supp. 223, 226 (N.D.Ga.1984) (where relief would require reinstating contract, action is one to order government to perform the contract).

Even if we assume that I–R seeks only the award of the contract, and that, after the award, the government may either perform or terminate so long as it acts in consonance with applicable regulations, *see* Reply Br. for Appellant at 15–16, this request also amounts to a request for specific performance. I–R's essential argument is that various regulations forbid the government from terminating this contract or putting it up for new bids; an award of the contract would mean that the government must perform. I–R, of course, would prefer to avoid becoming subject to the jurisdiction of the Claims Court because there its remedies could not include specific performance: "in the Court of Claims Act, Congress created a damage remedy for contract claims with jurisdiction limited to the Court of Claims [now the Claims Court] except in suits for less than $10,000. The measure is intended to foreclose specific performance of government contracts." H.R.Rep. No. 1656, 94th Cong., 2d Sess. 12–13 (1976), U.S.Code Cong. & Admin. News 1976, pp. 6121, 6132, 6133. To prevent government contractors from avoiding this remedy restriction, we have indicated that a complaint involving a request for specific performance must be resolved by the Claims Court. *See Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 894–95 (D.C.Cir.1985); *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 969 (D.C.Cir.1982).

Finally, we note that I–R has not established that the relief available in the Claims Court is inadequate. In the Claims Court, I–R will have available to it a damages remedy for wrongful termination of the contract. *See Torncello v. United States,* 681 F.2d 756 (Ct.Cl.1982). I–R's argument that this remedy is inadequate because it does not include reinstatement of the contract is unavailing. Congress has established, in the CDA, a scheme for the resolution of contract disputes. That scheme includes a deliberate limitation on certain types of remedies. To hold that the CDA does not apply merely because, under that scheme, plaintiff cannot receive all its requested remedies, would intolerably upset the congressional purpose underlying the Act. *See Consumers Solar Electric Power Corp. v. U.S. Postal Service,* 530 F.Supp. 702, 707 (C.D.Cal.1982) ("the government's waiver of sovereign immunity and its consent to be sued may be subject to any conditions which Congress sees fit to require").

## III. CONCLUSION

The District Court correctly applied the *Megapulse* framework in determining that I–R's complaint should be resolved in the Claims Court. Despite I–R's effort to characterize its rights and remedies, we find that this case involves a contractual claim appropriate for resolution under the CDA. The order of the District Court granting defendant's motion to dismiss the action is, therefore, affirmed.

Under 28 U.S.C. § 1631 (1982), where a court finds that it lacks jurisdiction, it must transfer such action to the proper court, if such transfer is in the interest of justice.[10]

---

10. In former section 1406(c) of Title 28, Congress provided:

If a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case shall proceed as if it had been filed in the Court of Claims on the date it was filed in the district court.

In the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 132, 96 Stat. 25, 39 (1982), Congress eliminated this provision. In

Transfer may be appropriate in this case. The parties, however, have not addressed this issue on appeal, and apparently did not do so before the district court. We therefore remand this case for the limited purpose of allowing the district court to consider whether the case should be transferred to the Claims Court. *See, e.g., Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1066 (3d Cir.1982) (remanding to the district court for consideration whether transfer is appropriate under 28 U.S.C. § 1631); *DSI Corp. v. Secretary of Housing and Urban Development*, 594 F.2d 177, 180 (9th Cir. 1979) (same under former provisions of 28 U.S.C. § 1406(c)); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir.1963) (same); *Hayes v. Livermont*, 279 F.2d 818, 818 (D.C.Cir.1960) (same under provisions of 28 U.S.C. § 1406(a)). We, of course, express no opinion as to whether transfer is appropriate under these circumstances.

*Affirmed and Remanded for a Limited Purpose.*

the same Act, however, Congress created 28 U.S.C. § 1631, which provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.