COOK, Circuit Judge,
dissenting.
This appeal concerns the sole issue of which court — the district court or the Court of Federal Claims — has subject matter jurisdiction over the truckers’ claims against the United States Postal Service (USPS). If, as USPS argues, the claims are essentially contractual, then the Contract Dispute Act (CDA) governs them and the Court of Federal Claims has exclusive subject matter jurisdiction. 41 U.S.C. §§ 601-13 (governing all contracts that an executive agency enters into for procuring goods and services). But if, as the truckers contend, their claims are based on constitutional and statutory rights, then the district court has subject matter jurisdiction.
The district court concluded that the claims are essentially contractual and granted USPS’s motion to dismiss for lack of subject matter jurisdiction. The majority, accepting almost completely the truckers’ characterization of their claims as constitutional and regulatory, concludes that the district court has subject matter jurisdiction over most of the claims. Because the district court correctly determined that all of the claims are essentially contractual, I respectfully dissent.
I
The majority proposes that in deciding whether the CDA governs the truckers’ claims, the district court should have followed the well-pleaded-complaint rule and based its decision only on the truckers’ pleadings, without evaluating any issue USPS raised in defense. But a corollary to the well-pleaded complaint rule — the artful-pleading doctrine — not only allows but requires courts to look beyond the pleadings to ascertain the source of a plaintiffs claims. Although the majority is correct that under the well-pleaded-complaint rule, federal question jurisdiction exists only if the federal element is part of the plaintiffs claim, Gully v. First Nat’l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), the plaintiff is not free to manipulate jurisdiction by omitting necessary federal elements from its claim. Rivet v. Regions Bank, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (“As a corollary to the well-pleaded defense rule, a plaintiff may not defeat removal by omitting to plead necessary federal questions. If the plaintiff thus ‘artfully pleads’ a claim, a court may uphold removal even though no federal question appears on the face of the complaint.” (citation and internal punctuation omitted)); Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (stating that when a plaintiff pleads only state causes of action, “original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is ‘really’ one of federal law” (emphasis added)); Federated Dep’t Stores, Inc. v. Moitie, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (agreeing that removal was proper when “respondents had attempted to avoid removal jurisdiction by ‘artful[ly]’ casting their ‘essentially federal law claims’ as state-law claims”). In short, the artful-pleading doctrine requires a court to “look[] past the surface allegations to make its own assessment of what law the claim arises under.” Int’l Armor & Limousine Co. v. Moloney Coachbuilders, Inc., 272 F.3d 912, 914 (7th Cir.2001).
*425 Courts apply the artful pleading doctrine not only in federal question cases but also in a variety of other cases, when plaintiffs attempt to manipulate procedural rules. See, e.g., Harrow v. Prudential Ins. Co., 279 F.3d 244, 253 (3d Cir.2002) (“Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims.”); Hartz v. Liberty Mut. Ins. Co., 269 F.3d 474, 476 (4th Cir.2001) (“By styling her complaint as one for breach of contract, Hartz attempts to avoid the Maryland bar against tort actions. No amount of artful pleading such as terming the damages ‘consequential’ can disguise what Hartz is seeking — extra-contractual damages for additional medical expenses, business losses, and emotional distress.”); Ford v. NYLCare Health Plans, 141 F.3d 243, 250 (5th Cir.1998) (“Basing the arbi-trability of an action merely on the legal label attached to it would allow artful pleading to dodge arbitration of a dispute otherwise ‘arising out of or relating to’ (or legally dependent on) the underlying contract.”); Lambert v. Kysar, 983 F.2d 1110, 1121 (1st Cir.1993) (“We cannot accept the' invitation to reward attempts to evade enforcement of forum selection agreements through artful pleading of tort claims in the context of a contract dispute.” (internal punctuation omitted)); Young v. Anthony’s Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir.1987) (finding that the district court “properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement artfully pleaded to avoid federal jurisdiction”). In a case involving the CDA, the D.C. Circuit Court of Appeals observed, “Courts have not hesitated to look beyond the pleadings of a case brought in district court to determine if it involves a claim over which the Court of Claims has exclusive jurisdiction.” Megapulse, Inc. v. Lewis, 672 F.2d 959, 967 (D.C.Cir.1982).
In this case, the majority fails to recognize the truckers’ artful pleading of their contract claims as constitutional and regulatory claims; this failure in effect sanctions the truckers’ attempts to evade the jurisdictional mandate of the CDA. A proper analysis of the truckers’ claims must begin with the understanding that “[t]he plaintiffs title or characterization of its claims is not controlling.... Rather, it is the determination of whether the action is essentially a contract dispute that controls.” Campanella, 137 F.3d at 892 (quoting RMI Titanium, 78 F.3d at 1136) (alteration in original). Moreover, “a plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions.” RMI Titanium, 78 F.3d at 1136 (quoting Ingersoll-Rand Co. v. United States, 780 F.2d 74, 77 (D.C.Cir.1985)). Thus, the truckers’ characterization ■ of their claims as constitutional and statutory has no bearing on whether the claims are contractual. Up State Fed. Credit Union v. Walker, 198 F.3d 372, 377 (2d Cir.1999) (rejecting plaintiffs “attempts to characr terize this action as an APA challenge rather than a contract dispute”); A & S Council Oil Co. v. Lader, 56 F.3d 234, 241 (D.C.Cir.1995) (finding claims were contractual. and noting, “It is true that plaintiffs have disavowed the notion that they are making contract claims. Instead, they say, the damages they have suffered flow from unlawful agency action.... In any event, plaintiffs’ labeling is of little importance.”).
Furthermore, in this case the contractual foundation of the truckers’ claims is evident from the truckers’ pleadings, not just from USPS’s “rebuttal points.” The truckers’ complaint raises the indisputably contractual (as well as dispositive) issue of *426 the validity of the amendments to the truckers’ contracts with USPS, alleging that “Plaintiffs were never consulted regarding the terms and conditions of these contracts [between USPS and the fuel suppliers], nor did they consent to be bound thereby” (Second Amended Compl. ¶ 5.4), and that USPS “is attempting to compel Plaintiffs ... to comply with those contracts without Plaintiffs’ permission” (Second Amended Compl. ¶ 8.3).
II
A. The Fifth Amendment Claims
The truckers argue that by interfering with their right to control their fuel supply, USPS deprived them of their property without due process or just compensation. But whether the truckers have a right to control their fuel supply depends upon whether their contracts with USPS afford such a right — in particular, whether the amendments to their contracts validly require the truckers to comply with the fuel plan. As the majority recognizes, “Amendment 3 is the apparent cause of Plaintiffs’ frustration.” And while it is true that “Plaintiffs do not seek specific performance of this [amended] contract” (emphasis added), they are in effect seeking specific performance of their pre-amendment contracts. The truckers’ objection to the contract amendments is the essence of their claims; everything else is a smoke-and-mirrors effort to obscure the claims’ contractual nature.
Additionally, if the truckers contend correctly that the contracts do not validly restrict their right to control their fuel supply, and USPS nevertheless has abridged that right, then the proper recourse would be a breach of contract claim, not a takings claim. See Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed.Cir.2001) (“[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.” (citations and internal punctuation omitted)).
B. The Regulatory Claims
The truckers further argue that USPS lacked authority to develop the fuel plan because USPS regulations prohibit USPS from interfering with the operation of its contractors’ businesses, and that in the absence of regulatory authority, USPS’s insistence that the truckers comply with the fuel plan violates their right to due process. Specifically, the truckers cite two regulations that they contend render the fuel plan invalid: USPS’s Purchasing Manual (stating that “[t]he objective of any purchasing action is to meet contract objectives, not control the supplier’s business”) and its Management Instructions (stating that “[purchases of fuel may be made from any source at the option of the contractor”).
This argument, however, conflicts with the truckers’ position that the amendments to their contracts do not obligate them to purchase fuel from the designated suppliers: the amendments cannot be both contractually invalid (as the truckers contend when arguing that the amendments do not constitute consent to the fuel plan) and contractually valid (as the truckers contend when arguing that the amendments are inconsistent with USPS regulations). If the amendments are contractually invalid and therefore do not compel the truckers to comply with the fuel plan, then the amendments cannot also violate USPS regulations by compelling the truckers to comply with the fuel plan.
This inconsistency, although perfectly acceptable as an alternative-pleading strat *427 egy, nevertheless highlights the contractual nature of truckers’ claims because their contracts with USPS are at the core ,of both sides of the truckers’ argument. Regardless of whether the truckers argue that USPS’s attempts to require them to purchase fuel from the designated suppliers violate the contracts, or that the contracts violate USPS regulations, their claims are contractual. The possibility that USPS’s attempts to require the truckers to adhere to the fuel plan might violate USPS regulations does not transform a claim into one that is regulatory and not contractual. See Ingersoll-Rand Co. v. United States, 780 F.2d 74, 78 (D.C.Cir.1985) (“The question presented by the complaint could be phrased as whether the contract forbids termination under these conditions. That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations.”). Otherwise, because every government agency is bound to follow some set of regulations, every government contractor could recast its contract claims as regulatory claims, thereby nullifying the CDA. Cf. United States v. J & E Salvage Co., 55 F.3d 985, 988 (4th Cir.1995) (“Effective enforcement of the jurisdictional limits of the CDA mandates' that courts recognize contract actions that are dressed in tort clothing.”); Melanson v. United Air Lines, Inc., 931 F.2d 558, 561 n. 1 (9th Cir.1991) (“Nearly any contract claim can be restated as a tort claim. The RLA’s grievance procedure would become obsolete if it could be circumscribed by artful pleading.”).
C. Relief Available from the Court of Federal Claims
Finally, the truckers contend that the district court has jurisdiction because the Court of Federal Claims cannot grant the injunctive relief they seek. While the truckers correctly assert that the Court of Federal Claims cannot grant this relief outright, the court can achieve the same result — freedom from compliance with the fuel plan — if the court finds that such a result is appropriate, by granting a contractual remedy such as reforming the truckers’ contracts with USPS. See Ho v. United States, 49 Fed. Cl. 96, 100 (2001) (“Reformation of a contract is an equitable remedy that may be invoked in this court ... when the contract contains ... provisions that are contrary to law.” (citing Am. Tel. & Tel. Co. v. United States, 177 F.3d 1368, 1376 (Fed.Cir.1999); McClure Elec. Constructors, Inc. v. Dalton, 132 F.3d 709, 711 (Fed.Cir.1997); Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed.Cir.1994))).
Ill
Because all of the truckers’ claims relate to their contracts with USPS, ■ the CDA governs the claims, and exclusive subject matter jurisdiction therefore lies in the Court of Federal Claims. Thus, I dissent from the majority’s decision reversing the district court’s dismissal of the truckers’ claims for lack of subject matter'jurisdiction.