**SRS TECHNOLOGIES, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 95–0801 (RCL).

United States District Court, District of Columbia.

July 18, 1995.

Alan M. Grayson, McLean, VA, for plaintiff.

Robert L. Shapiro, U.S. Attorney's Office, Washington, DC, for defendant.

Keith L. Baker, Eckert, Seamans, Cherin & Melott, Washington, DC, for intervenor-defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case involves an appeal from the Small Business Administration's ("SBA") determination that plaintiff SRS Technologies ("SRS") is not a "small disadvantaged business concern" ("SDB") for purposes of participating in government set-aside programs. Plaintiff contends that in reviewing plaintiff's SDB status, the SBA failed to follow its own regulations, willfully relied upon inaccurate information, and otherwise acted in an arbitrary and capricious manner, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* Now before the court are plaintiff's motion for preliminary injunction and the parties' cross motions for summary judgment. Intervenor IMS Services, Inc. ("IMS"), has also filed a motion for summary judgment seeking to have the SBA's determination upheld. For the reasons set forth below, the plaintiff's motions will be denied, and summary judgment will be entered in favor of the defendants.

## I. Introduction

The precise series of events leading to the present action is rather complex. The legal issue presented for review, however, is not. A brief description of the facts will suffice.

In June of 1993, the Navy issued a Solicitation for telecommunications support services at the Naval Air Warfare Center at Point Mugu, California. The Solicitation provided that the procurement was a set-aside for SDB concerns, and that the award of the contract would be made to the technically acceptable offeror with the lowest evaluated cost to the Navy. On May 4, 1994, the Navy awarded the contract to intervenor IMS. Plaintiff protested this award to the General Accounting Office ("GAO"). In September of 1994, the GAO sustained SRS's protest, and the Navy reopened the procurement. In the second round of bidding, the Navy found that SRS was the lowest-priced, technically qualified offeror.

While these events were unfolding, however, plaintiff's status as an SDB had been successfully challenged in connection with a different military procurement. As a result of this challenge, the SBA determined that SRS was not entitled to SDB status, and this decision was upheld by the SBA on administrative appeal. SRS then filed suit in this court challenging, *inter alia,* the SBA's determination of SRS's SDB status. On January 24, 1994, this court issued a Memorandum Opinion which held, in part, that the SBA's resolution of SRS's SDB status was not improper under the APA. *SRS Technologies v. United States,* 843 F.Supp. 740, 745–46 (D.D.C.1994) (Lamberth, J.).

SBA's regulations permit a company which the SBA has found not to be an SDB to "self-certify" itself as an SDB if the company believes that changed circumstances render it eligible for SDB status once again. During 1993 and 1994, SRS experienced losses which diminished the value of the company. As a result of these "changed circumstances," SRS self-certified itself as an SDB in connection with the Point Mugu procurement.

The contracting officer for the Navy protested SRS's SDB eligibility to the SBA's Office of Program Eligibility on December 6, 1994. In mid-February of 1995, IMS filed its own protest of SRS's SDB status. Following SRS's submission of over 1000 documents in support of its purported SDB status, the SBA concluded, on March 24, 1995, that SRS was not an SDB. Specifically, the SBA found that 1) Mohindar Sandhu, the president and primary owner of SRS, was not an "economically disadvantaged" person;[1] and 2) due to the existence of certain outstanding stock options, it could not be said that SRS was "at least 51 per centum owned by one or more socially and economically disadvantaged individuals" as required SBA regulations. 13 C.F.R. § 124.602($l$)(2). Either finding would be sufficient by itself to preclude SRS from being an SDB.

SRS appealed this decision to the SBA's Associate Administrator for Minority Enterprise Development, who upheld the decision. SRS then filed the instant suit, seeking review of the SBA's determination under the APA. SRS challenges four particular aspects of the SBA's decision: 1) the determination that Mohindar Sandhu and his two children, Peter Sandhu and Patricia Marshall, are not economically disadvantaged persons; 2) the use of Mohindar Sandhu's nondisadvantaged status as a dispositive factor in denying SRS SDB status; 3) the conclusion that, even if Mr. Sandhu and his children *were* socially and economically disadvantaged, the existence of certain stock options would preclude a finding that SRS is at least fifty-one percent owned by socially and economically disadvantaged individuals; and 4) the SBA's failure to forward a copy of IMS's protest to SRS.

1. SRS is partly owned by Mr. Sandhu's two children, Peter Sandhu and Patricia Marshall. In its March 24 letter to Mr. Sandhu, the SBA concluded that SRS had also failed to establish that either Peter or Patricia were economically disadvantaged.

2. By regulation, Mr. Sandhu, a native of India, and his children are presumed to be socially disadvantaged. *See* 13 C.F.R. § 124.105. Neither defendants nor IMS have sought to rebut this presumption, nor has the constitutionality of the set-aside program itself been challenged in this proceeding. *See Adarand Constructors, Inc. v. Pena,* — U.S. —, 115 S.Ct. 2097, 132

## II. Analysis

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing agency action under the APA, the reviewing court should presume the agency action to be valid and should not substitute its own judgment for that of the agency. *Motor & Equipment Mfrs. Assoc. v. EPA,* 627 F.2d 1095, 1105 (D.C.Cir.1979), *cert. denied* 446 U.S. 952, 100 S.Ct. 2917, 64 L.Ed.2d 808 (1980). So long as the agency offers a reasoned basis for its decision, its action is not arbitrary and capricious. *Id.* at 1106.

### A. Economic Disadvantage

The regulations determining eligibility for participation in the SBA's small disadvantaged business set-aside program are set forth in Title 13, Part 124, of the Code of Federal Regulations. As defined in the SBA's regulations, a "Small Disadvantaged Business Concern" must be "at least 51 per centum owned by one or more socially and economically disadvantaged individuals as defined by §§ 124.105 and 124.106, title 13, CFR." 13 C.F.R. § 124.602($l$)(2).[2] Section 124.106, in turn, states that "economically disadvantaged individuals are socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged...." 13 C.F.R. § 124.106(a)(1)(i).[3] The regulations state

L.Ed.2d 158 (1995). Accordingly, the court does not address these issues.

3. Section 124.106(a) sets forth the criteria for evaluating economic disadvantage in SBA 8(a) programs. Section 124.106(b), which applies to other set-aside programs (such as the one at issue in here), simply states that the SBA "will consider the factors set forth in paragraph (a) of this section, but will apply standards to each factor that are less restrictive than those applied when determining economic disadvantage for purposes of the 8(a) program." 13 C.F.R. § 124.106(b)(1). In addition, subparagraph (b)(2) provides that "[a]n individual whose per-

that in evaluating economic disadvantage, "SBA will consider factors relating both to the applicant concern and to the individual(s) claiming disadvantaged status." § 124.106(a)(2). These factors fall into three general categories: 1) the personal financial condition of the individuals claiming disadvantaged status; 2) the financial condition of the applicant concern; and 3) the applicant concern's access to credit, capital, and markets. *See id.*

One basis for the SBA's decision to deny SRS SDB status was SBA's conclusion that Mohindar Sandhu is not an economically disadvantaged person. In support of this determination, the SBA found that Mr. Sandhu's wages in 1992 and 1993 were $395,817 and $411,524, respectively, and that the total fair market value of Mr. Sandhu's personal assets (including his $2.75 million ownership interest in SRS) was over $3,000,000. The SBA noted that "this scenario is not indicative of an economically disadvantaged individual." SBA Letter of March 24, 1995, to Mohindar Sandhu at 2 (hereafter "SBA Determination Letter").

With regard to the operating losses incurred by SRS and the consequent drop in value of Mr. Sandhu's ownership interest in the company, the SBA noted that "the major reason for the 1994 drop in value of your assets is . . . a non-recurring charge for litigation in the amount of $1.5 million dollars. . . . There is no evidence that the drop in SRS Technologies' net worth was the result of your inability to compete in the free enterprise system." *Id.* Thus, the SBA found that the "changed circumstances" upon which SRS based its self-certification did not provide a sufficient basis for granting SDB status to SRS.

SRS contends that SBA's analysis of Mr. Sandhu's financial condition was "rife with clear errors." Pl.'s Mem. in Supp.M.Preliminary Injunction at 20 [hereafter Pl.'s PI Mem.]. SRS further contends that under its governing regulations, the SBA was required to "measure Mr. Sandhu's personal financial condition against the owners of other, similar concerns." *Id.* Specifically, SRS argues that SBA should have compared SRS's position to that of one of its competitors, EER Systems. Plaintiff contends that the SBA's decision to deny SDB status to SRS while granting it to a larger and "less economically disadvantaged" company—EER Systems— was arbitrary and capricious.

■ Plaintiff's objections to the SBA's analysis of Mr. Sandhu's personal financial condition are without merit. SRS does not dispute that Mr. Sandhu's income was approximately $400,000 in both 1992 and 1993.[4] With respect to the fair market value of Mr. Sandhu's personal assets, however, SRS contends that the SBA improperly ascribed a value of nearly $3.0 million to his ownership interest in SRS, when in fact the value of Mr. Sandhu's stock "may be nothing." Pl.'s Reply Brief at 9. The administrative record is replete with references to the "fair market value" of SRS's stock and Mr. Sandhu's ownership interest. *See e.g.,* Administrative Record ("AR"), Tab 2 at 2; AR, Tab 4 at 2. Plaintiff argues that these calculations were performed "strictly for valuing small quantities of stock in SRS's employee stock ownership plan." *Id.* at 9 n. 5. However, this argument flies in the face of Mr. Sandhu's own submissions to the SBA, wherein he states that, at the end of Fiscal Year 1993, "the *fair market value* of SRS was $5,521,131." AR, Tab 2 at 2 (emphasis supplied). Plaintiff's contention that it was arbitrary and capricious for the SBA to use figures

sonal net worth exceeds $750,000 . . . will not be considered disadvantaged [for SBA set-aside purposes]." The cut-off for SBA 8(a) programs, by contrast, is a personal net worth of $250,000. 13 C.F.R. § 124.106(a)(2)(i).

**4.** SRS argues that the SBA's conclusion that a salary of roughly $400,000 per year is "not indicative of an economically disadvantaged individual" contradicts the findings of the Defense Contract Audit Agency ("DCAA"), which has audited SRS several times and has not found Mr. San-

dhu's salary to be "excessive." Pl.'s PI Mem. at 22 n. 12. As intervenor IMS notes, however, the DCAA is charged with examining whether expenses charged to government contracts are reasonable—the DCAA's inquiry has nothing whatever to do with a company's SDB status. SRS's assertion that the conclusions of the SBA and the DCAA are somehow inconsistent simply underscores SRS's misunderstanding of the process by which the SBA determines SDB status.

submitted by Mr. Sandhu himself concerning the fair market value of his ownership interest in SRS is wholly without merit.[5]

■ Plaintiff's argument that the SBA's disparate treatment of SRS and EER Systems was arbitrary and capricious is similarly unfounded. First, there is simply no requirement in the regulations that the SBA compare the economic status of different *companies* when evaluating the economic status of the *individuals* who own those companies. Plaintiff's confusion on this point is revealed by the following statement: "The SBA completely ignored the fact that it found a company similar to SRS in all respects, except *wealthier* than SRS, to be economically disadvantaged, while SRS was not." Pl.'s Mem. in Supp.M.Sum.J. at 9. What plaintiff fails to appreciate is that the "personal financial condition" inquiry, § 124.106(a)(2)(i), does not involve any analysis of the company's financial status or comparison with other businesses. Such a comparison occurs only under the "business financial condition" inquiry, § 124.106(a)(2)(ii).

■ Second, to the extent plaintiff is simply arguing that it is unfair to treat SRS and EER Systems differently, this argument fails as well. The mere fact that EER systems is larger than SRS does not necessarily mean that the personal financial condition of its owner or owners is superior to Mr. Sandhu's. Plaintiff offers no facts which demonstrate that any of EER Systems' owners are in fact better off, financially, than Mr. Sandhu. Accordingly, there is no basis to conclude that the SBA's decision to grant SDB status to EER Systems, while denying it to SRS, was arbitrary, capricious or otherwise unfair.

## B. Use of Mr. Sandhu's Personal Financial Condition as a Dispositive Factor

According to plaintiff, the SBA improperly concluded that Mr. Sandhu's nondisadvantaged status was itself sufficient to preclude his company from being an SDB. As set forth above, the regulations state that in "determining the degree of diminished credit and capital opportunities of a socially disadvantaged individual, SBA will consider factors relating both to the applicant concern and to the individuals claiming disadvantaged status." 13 C.F.R. § 124.106(a)(2). The regulations explain that these factors fall into the following three general categories: 1) personal financial condition of the individuals claiming disadvantaged status; 2) business financial condition; and 3) the business's access to credit and capital. *Id.* According to plaintiff, the language in § 124.106(a)(2) stating that the SBA "will consider factors relating both to the applicant concern and to the individual claiming disadvantaged status" is mandatory, and it is impermissible for the SBA to examine only one of the three categories set forth above when making its SDB determination.

Although one may search in vain through plaintiff's filings for an explanation of just how these factors should be applied, plaintiff's position appears to be that the SBA must examine each factor and then weigh them all together. According to plaintiff, the SBA may not base its decision upon an analysis of one factor only. Thus, if Mr. Sandhu had submitted information concerning his personal financial condition which demonstrated that he was a billionaire, it would have been improper, according to plaintiff's view, for the SBA to end its inquiry there. Plaintiff would presumably argue that, no matter how wealthy the owner is, a company's "business financial condition" or "access to credit and capital" (the two remaining factors which plaintiff contends the SBA must always consider) could be sufficiently impaired as to warrant SDB status.

■ Obviously, this is not the law. The regulations specifically state that "this pro-

---

5. Plaintiff also attacks the SBA's determination that Mr. Sandhu's children, Peter and Patricia, might not be economically disadvantaged individuals. In reviewing the parties' arguments, the court understands plaintiff's frustration. Defendants' explanation of the SBA's conduct with regard to Peter Sandhu and Patricia Marshall certainly depicts an agency more concerned with following the letter of its regulations than with ascertaining the true financial status of Mr. Sandhu's children. Nevertheless, because the SBA properly determined that Mohindar Sandhu is not an economically disadvantaged individual, SRS cannot be an SDB; whether Peter and Patricia are themselves economically disadvantaged is immaterial.

gram is not intended to assist concerns owned and controlled by socially disadvantaged individuals *who have accumulated substantial wealth* ... or who have not experienced or have overcome impediments to obtaining access to financing, markets and resources." 13 C.F.R. § 124.106(a)(1)(ii) (emphasis supplied). In *Autek Systems Corp. v. United States*, 835 F.Supp. 13, 15 (D.D.C. 1993); *aff'd*, 43 F.3d 712 (D.C.Cir.1994), Judge Oberdorfer held that "SBA did not abuse its discretion by considering [the owner's] income as the dispositive factor" in analyzing the plaintiff company's economic status.[6] The regulations are quite clear that to qualify as an SDB, a company must be owned by socially and *economically* disadvantaged individuals. *See Adarand Constructors, Inc. v. Pena*, — U.S. —, —, 115 S.Ct. 2097, 2129, 132 L.Ed.2d 158 (1995) (Stevens, J., dissenting) (noting that set-aside programs "exclude[ ] members of minority races who are not, in fact, socially or economically disadvantaged"). In sum, SBA's conclusion that Mr. Sandhu's non-economically disadvantaged status alone precluded SRS from being an SDB was neither arbitrary nor capricious, nor otherwise improper.

### C. SBA's Findings with Regard to Outstanding Stock Options

As an alternative basis for its denial of SDB status, the SBA found that the existence of certain stock options meant that SRS "may not be at least fifty-one percent unconditionally owned by a socially and economically disadvantaged individual(s)." SBA Determination Letter at 3. The SBA found that if all existing stock options were exercised by nondisadvantaged persons, "the persons upon whom eligibility is based would own just under fifty-one percent of the firm." According to plaintiff, however, Mr. Sandhu and his son Peter hold the right to exercise most of the stock options. Thus, even if all of the stock options available to persons other than Mr. Sandhu and his son were exercised, Peter and Mr. Sandhu would still own over 51% of SRS. Defendants contend that

SRS failed to place this clarifying information before the initial reviewer and that SBA regulations permitted the exclusion of any additional evidence during the administrative appeal process.

The court need not resolve the question of whether the SBA's treatment of this issue was arbitrary and capricious. As set forth above, Mr. Sandhu's nondisadvantaged status precludes SRS from being an SDB. Nevertheless, the court appreciates plaintiff's consternation. From the parties' briefs, it appears that the SBA failed to clarify the status of SRS's outstanding stock options when it could easily have done so and also refused to consider any additional information in the course of SRS's administrative appeal, despite SRS's proffers. While it is possible that this conduct did not technically violate any of the applicable regulations, it does smack of a certain bureaucratic high-handedness.

### D. SBA's Failure to Forward IMS's Protest to SRS

SBA's regulations provide that when the SBA receives a protest challenging the disadvantaged status of a company, SBA shall forward a copy of the protest to that company. *See* § 124.608(b). While both the Navy and IMS protested SRS's SDB status, SRS only received a copy of the Navy's protest. SRS was never forwarded a copy of IMS's protest. According to plaintiff, "[w]hen the SBA made its determination that SRS did not qualify as an SDB, it had and it used the information provided in IMS's protest. This Star Chamber proceeding is a clear violation of the SBA's own regulations and, more importantly, a violation of SRS's constitutional rights." Pl.'s PI Mem. at 12–13. The SBA contends that it did not have, and therefore did not consider, IMS's protest when it reviewed SRS's eligibility status.

The court finds that whether or not SBA considered IMS's protest, SRS was not prejudiced by its failure to receive a copy of

---

6. Plaintiff argues that *Autek 's* holding "does not mean that consideration of personal income *alone* is sufficient. Rather it means that when all factors are considered, personal income (or any

other factor) may be dispositive." Pl.'s Mem. in Supp.M.Sum.J. at 11 (emphasis in original). The court finds plaintiff's purported distinction wholly untenable.

**14**

IMS's protest. The SBA's determination that SRS was not entitled to SDB status was based on its finding 1) that Mohindar Sandhu and his children were not economically disadvantaged individuals; and 2) that because of certain stock options, SRS might not be at least fifty-one percent owned by nondisadvantaged individuals. IMS's protest, by contrast, challenged SRS's SDB status on the grounds that

> 1) SRS was not a small business because its affiliation with a proposed subcontractor made SRS a joint venture in violation of 13 C.R.R. § 121.402; and 2) SRS was not a disadvantaged business based upon its contractual relationship with this proposed subcontractor, because that subcontractor would have control over SRS in violation of 13 C.F.R. § 124.104(d)(6).

Intervenor's Opp. at 8. SBA's resolution of SRS's SDB status had nothing whatever to do with the issues raised in IMS's protest. Accordingly, there is simply no reason to believe that SRS was in any way prejudiced by not receiving a copy of IMS's protest.

III. Conclusion

Mohindar Sandhu is the primary owner of SRS Technologies. Mr. Sandhu's salary during each of the past two years was close to $400,000, and the value of his assets, including his ownership interest in SRS, exceeds $3 million. One of the criteria for SDB status is that a company must be fifty-one percent owned by an individual or individuals who are socially and economically disadvantaged. On the basis of information submitted by Mr. Sandhu himself, the SBA properly found that Mr. Sandhu was not an economically disadvantaged person. Mr. Sandhu's nondisadvantaged status alone is sufficient to disqualify SRS from being an SDB. Accordingly, the court finds that there is no basis to disturb the SBA's determination of SRS's status. A separate Order shall issue this date.