RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

B&B TRUCKING, INC.; CAUSLEY TRUCKING, INC.;
CLIFF BLACKBURN; FEDRIZZI, INC.; FOREMAN
BROS., INC.; GEORGE E. CAMPBELL AND SONS, INC.;
L.R. VINCENT TRUCK AND SERVICE, INC.; M.C.
EIPPERLE, INC.; MASSMAN TRUCKING, INC.; P-D
TRUCKING, INC.; ROBERT M. NEFF, INC.; ROTH
TRUCKING, INC.; ROYSTER ENTERPRISES, INC.;
SODREL TRUCK LINES, INC.; TAYLOR POSTAL
CONTRACTING, INC.; NATIONAL STAR ROUTE MAIL
CONTRACTORS ASSOCIATION; B&B INDUSTRIES,
INC.; B&T MAIL SERVICES, INC.; SHEEHY MAIL
CONTRACTORS, INC.,

　　　　　　　　　　　　*Plaintiffs-Appellants,*

　　*v.*

UNITED STATES POSTAL SERVICE,

　　　　　　　　　　　　*Defendant-Appellee.*

No. 02-1562

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-72978—Avern Cohn, District Judge.

Argued: December 8, 2004

Decided and Filed: April 28, 2005

Before: BOGGS, Chief Judge; MARTIN, BATCHELDER, DAUGHTREY, MOORE, COLE,
CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, and COOK, Circuit Judges.

---

## COUNSEL

**ARGUED:** Sharon Ambrosia-Walt, HOUGER & WALT, Seattle, Washington, for Appellants.
Brian M. Simkin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee. **ON BRIEF:** Sharon Ambrosia-Walt, HOUGER & WALT, Seattle, Washington, for
Appellants. Brian M. Simkin, David M. Cohen, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee.

　　　COOK, J., delivered the opinion of the court, in which BOGGS, C. J., BATCHELDER,
GILMAN, GIBBONS, ROGERS, and SUTTON, JJ., joined.  COLE, J. (pp. 5-6), delivered a

separate concurring opinion, in which DAUGHTREY, J., joined.  MARTIN, J. (pp. 7-11), delivered a separate dissenting opinion, in which MOORE and CLAY, JJ., joined.

---

## OPINION

---

COOK, Circuit Judge.  Plaintiffs (collectively "truckers") appeal the district court's order dismissing their claims for lack of subject matter jurisdiction.  At issue is whether the truckers' claims are essentially contractual and therefore must be heard in the Court of Federal Claims under the Contract Disputes Act.  We hold that the claims are essentially contractual and affirm the district court's dismissal.

### I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff truckers are independent contractors who transport mail for the United States Postal Service ("USPS").  Under their contracts, USPS pays the truckers based in part upon their annual estimates of the cost and amount of fuel they will use.  If fuel costs increase, their contracts entitle them to an adjustment in the contract price.

In 2000, the USPS introduced a new fuel-purchasing program.  Under the plan, USPS uses its buying power to negotiate fuel prices on behalf of mail transporters such as the Plaintiffs.  The truckers then buy fuel directly from the fuel suppliers at the USPS-negotiated wholesale prices.  USPS implemented this plan by adding "Amendment 3" to its new and renewal mail transportation contracts.  That amendment requires that the truckers purchase fuel from USPS-designated suppliers, either at USPS-designated facilities or delivered to the truckers' own fueling facilities.

In their First Amended Complaint below, the truckers claimed that, by requiring them to participate in the Amendment 3 fuel plan, USPS breached its contracts with the truckers, breached an implied covenant of good faith and fair dealing, violated the truckers' constitutional liberty and property rights, and violated the Separation of Powers Clauses of the United States Constitution by engaging in "arbitrary agency action without legal authority."

USPS moved to dismiss the First Amended Complaint on lack-of-subject-matter-jurisdiction grounds.  The district court responded by deciding that the truckers failed to adequately plead their claims, but gave them thirty days to amend their complaint.  The truckers' Second Amended Complaint dropped the breach of contract and breach of implied covenant claims.  It alleged only that the Plan violated the truckers' Fifth Amendment liberty and property rights, violated postal regulations, and constituted "arbitrary agency action without statutory authority."

The district court dismissed the case, holding that because the truckers' constitutional and regulatory claims were essentially contractual, jurisdiction was properly in the Court of Federal Claims, not the United States District Court.

### II.  ANALYSIS

#### A.  The Jurisdictional Test

Under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613, the Court of Federal Claims has exclusive jurisdiction for judicial review over any dispute relating to a contract for goods and services between an executive agency of the United States government and an independent contractor.  *Id.* § 609(a)(1).  The CDA bars district court jurisdiction if the court determines that a plaintiff's claims against a government agency are "essentially contractual" in nature.  *RMI Titanium*

*Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996). "'The classification of a particular action as one which is or is not [essentially contractual] depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate).'" *Id.* (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). "The plaintiff's title or characterization of its claims is not controlling. '[A] plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions.'" *Id.* (alteration in original) (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985)).

Thus if, as USPS argues, the truckers' claims are essentially contractual, then the Court of Federal Claims has exclusive subject matter jurisdiction. But if, as the truckers contend, their claims are genuinely based on constitutional and statutory rights, then the district court has subject matter jurisdiction. We agree with the district court that all of the claims are essentially contractual, and therefore affirm its dismissal of the case.

### B. The Fifth Amendment Claims

The truckers argue that by interfering with their right to control their fuel supply, USPS deprived them of their property without due process or just compensation. But whether the truckers have a right to control their fuel supply depends upon whether their *contracts* with USPS afford such a right—in particular, whether Amendment 3 validly requires the truckers to comply with the fuel plan. The truckers, in effect, seek specific performance of the contracts as they stood before any amendment. Their objection to the contract amendments is the essence of their claims; both the source of the rights upon which the Plaintiffs base their claims (contracts with USPS to transport mail), and the type of relief appropriate (reformation of the contracts to bar enforcement of Amendment 3) manifest the claims' contractual nature. The district court appropriately determined that the truckers' characterization of their claims as non-contractual was an effort to obscure the claims' true nature.

Additionally, if the truckers contend correctly that the contracts do not validly restrict their right to control their fuel supply, and USPS nevertheless abridged that right, then the proper recourse would be a breach-of-contract claim, not a takings claim. *See Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." (citations and internal punctuation omitted)).

### C. The Regulatory Claims

The truckers further argue that USPS lacked authority to develop the fuel plan because USPS regulations prohibit USPS from interfering with the operation of its contractors' businesses, and that in the absence of regulatory authority, USPS's insistence that the truckers comply with the fuel plan violates their right to due process. Specifically, the truckers cite two regulations that they contend render the fuel plan invalid: USPS's Purchasing Manual (stating that "[t]he objective of any purchasing action is to meet contract objectives, not control the supplier's business") and its Management Instructions (stating that "[p]urchases of fuel may be made from any source at the option of the fuel contractor").

This argument, however, conflicts with the truckers' position that the amendments to their contracts do not obligate them to purchase fuel from the designated suppliers: the amendments cannot be both contractually invalid (as the truckers contend in advancing their Fifth Amendment claim, arguing that the amendments do not constitute consent to the fuel plan) and contractually valid (as the truckers contend when arguing that the amendments are inconsistent with USPS

regulations). If the amendments are contractually invalid and therefore do not compel the truckers to comply with the fuel plan, then the amendments cannot also violate USPS regulations by compelling the truckers to comply with the fuel plan.

This inconsistency, although perfectly acceptable as an alternative-pleading strategy, nevertheless highlights the contractual nature of the truckers' claims, because their contracts with USPS are at the core of both sides of the truckers' argument. Regardless of whether the truckers argue that the new fuel-purchase requirements violate the contracts, or that the contracts violate USPS regulations, their claims are contractual. That the fuel plan might violate USPS regulations does not transform a claim into one that is regulatory and not contractual. *See Ingersoll-Rand Co.*, 780 F.2d at 78 ("The question presented by the complaint could be phrased as whether the contract forbids termination under these conditions. That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations.") Otherwise, because every government agency is bound to follow some set of regulations, every government contractor could recast its contract claims as regulatory claims, thereby nullifying the CDA. *Cf. United States v. J & E Salvage Co.*, 55 F.3d 985, 988 (4th Cir. 1995) ("Effective enforcement of the jurisdictional limits of the CDA mandates that courts recognize contract actions that are dressed in tort clothing."); *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 561 n.1 (9th Cir. 1991) ("Nearly any contract claim can be restated as a tort claim. The RLA's grievance procedure would become obsolete if it could be circumscribed by artful pleading.").

### D. Relief Available from the Court of Federal Claims

Finally, the truckers contend that the district court has jurisdiction because the Court of Federal Claims cannot grant the injunctive relief they seek. We initially note that the CDA provides that "[*a*]*ll* claims by a contractor against the government relating to a contract . . . shall be submitted to the contracting officer for a decision," 41 U.S.C. § 605(a) (emphasis added), and that the contractor may seek judicial review only in the Court of Federal Claims. *Id.* § 609(a)(1). Thus—because the CDA does not condition that court's jurisdiction upon the relief sought, but upon whether claims relate to a contract—the relief available in the Court of Federal Claims is irrelevant. *See Ingersoll-Rand Co.*, 780 F.2d at 80 (holding that a claim for specific performance of a government contract "must be resolved by the Claims Court," even though the Claims Court had no power to grant specific performance).

Further, while the truckers correctly assert that the Court of Federal Claims cannot grant the relief they seek outright, that court can achieve the same result—freedom from compliance with the fuel plan—if it finds such a result appropriate, by granting a contractual remedy such as reforming the truckers' contracts with USPS. *See Ho v. United States*, 49 Fed. Cl. 96, 100 (2001) ("Reformation of a contract is an equitable remedy that may be invoked in this court . . . when the contract contains . . . provisions that are contrary to law." (citing *Am. Tel. & Tel. Co. v. United States*, 177 F.3d 1368, 1376 (Fed. Cir. 1999); *McClure Elec. Constructors, Inc. v. Dalton*, 132 F.3d 709, 711 (Fed. Cir. 1997); *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994))).

### III. CONCLUSION

Because all of the truckers' claims relate to their contracts with USPS, the Court of Federal Claims has exclusive jurisdiction over this case. Therefore, we affirm the district court's dismissal.

---
**CONCURRENCE**
---

R. GUY COLE, JR., Circuit Judge, concurring.  I concur in the majority's opinion but write separately to clarify what I take to be the basis for today's majority holding: the fact that plaintiffs have effectively artfully pleaded what are essentially contractual claims, in an attempt to avoid the jurisdictional bar of the Contracts Dispute Act ("CDA").

The CDA establishes exclusive Court of Federal Claims jurisdiction over claims against the federal government that are "essentially contractual" in nature.  *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996).  Such exclusive jurisdiction would be meaningless if every claim could be artfully pleaded in such a fashion as to avoid this jurisdictional bar.  As the majority notes, nearly any contract claim can be restated as a tort claim. *Ante* at 4 (Maj. Op.); *see also Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 561 n.1 (9th Cir. 1991).  Similarly, nearly every contract claim against a federal agency could be restated as a claim that the agency at issue has violated some internal regulation, or that the agency has acted in an arbitrary or capricious manner. *See, e.g.*, *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985).  As a result, along with the majority, I would examine the claims here to determine if they are actually contractual claims in other claims' clothing.

Courts have long applied this sort of "artful pleading" test in many jurisdictional contexts. *See, e.g.*, *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 253 (3d Cir. 2002) ("Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims."); *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1231 (6th Cir. 1995) ("We refuse to allow a party's solemn promise to be defeated by artful pleading."); *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) ("We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through artful pleading of tort claims in the context of a contract dispute." (internal punctuation and citation omitted); *see also B&B Trucking v. USPS*, 363 F.3d 404, 425 (6th Cir. 2004) (Op. of Cook, J., dissenting) (citing many of these and other such cases). *But see Rossell-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 12 (1st Cir. 2004) ("[W]e are skeptical of the applicability of the artful pleading doctrine outside of complete federal preemption of a state cause of action.").  I see no reason why the artful pleading doctrine ought not be applied here.

In the instant case, I agree with both the majority and the dissent that the proper question as to whether the CDA prohibits district court jurisdiction under the *RMI Titanium / Megapulse* test involves an examination of the "rights and remedies" set forth in the complaint. *See RMI Titanium*, 78 F.3d at 1136 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).  However, I see the underlying rights presented by the plaintiffs here as contractual in nature, despite the fact that their complaint appears on its face to discuss only non-contractual rights.

The truckers first complain that the USPS is interfering with their Fifth Amendment rights.  However, the types of interference that the truckers describe do not involve any actions other than instructions to comply with contract provisions.  For example, the truckers claim that the USPS is intruding upon their land, in violation of their Fifth Amendment rights, by requiring fuel suppliers to fill the fuel tanks at the truckers' depots.  But armed federal officers are not physically intruding onto the truckers' land and pumping unwanted fuel into the truckers' fuel tanks.  Rather, the USPS has merely amended the contracts, in accordance with the terms of those contracts, and instructed the truckers to comply with the new terms.  The truckers, of course, could refuse to comply, and risk losing their contracts or being in breach, but no actual "trespass" or "taking" is occurring outside of the bounds of the contract mechanism.  Thus these claims are essentially contractual, despite the truckers' efforts to cloak them in Fifth Amendment garb; any "taking" or interference with the

truckers' property that has occurred here has only occurred via contractual means, just as any "rights" with which the USPS is interfering are those resulting from the contracts. And similar arguments can be made about the truckers' remaining Fifth Amendment claims. Accordingly, these claims are "essentially contractual."

In reaching this conclusion, it is not important that the USPS's defense would be based on the contracts at issue. I agree with the dissent that the existence of a viable contract-based defense does not render district court jurisdiction inappropriate. *See, e.g.*, *Post* at 10 (Op. of Martin, J., dissenting); *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 4 (D.C. Cir. 1998) (noting that the existence of relevant contract-related issues does not render a claim "essentially contractual"). For example, suppose the aforementioned armed federal agents had entered onto the truckers' property without permission, asserting "We are only pumping fuel here because the contracts say we can." In such a situation, I would have no difficulty finding district court jurisdiction over the truckers' Fifth Amendment trespass claims, despite the fact that the government's defense would rely exclusively on rights granted by contract. However, the appropriate inquiry (in which I take the majority opinion to have engaged, and with which I agree) does not take possible defenses into account. Rather, it examines the claims to determine their underlying source and whether the claims are merely being artfully pleaded to avoid the CDA's jurisdictional bar. In the instant case such an inquiry results in a determination that the truckers' complaint effectively asserts only contractual causes of action cloaked in non-contractual language. I reach this conclusion without reference to the USPS's possible defenses.

Further, I agree with the majority that the fact that the truckers have claimed that the USPS's actions in attempting to enforce its contracts were contrary to its regulations and were arbitrary and capricious does not automatically render such claims non-contractual. The dissent evaluates these claims facially without examining the effect that its proposed holding would have on the CDA's enforcement scheme. It stretches the imagination to think of a contract dispute that could not be argued under a "contrary to controlling regulations" or "arbitrary and capricious" theory. *See, e.g.*, *Int'l Eng'g Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d 573, 580 (D.C. Cir. 1975) ("[I]t is hard to conceive of a claim falling no matter how squarely within the [CDA] which could not be urged to involve as well agency error subject to review under the APA."); *see also Megapulse*, 672 F.2d at 405 ("[A] plaintiff whose claims against the United States are essentially contractual should not be allowed to avoid the jurisdictional . . . restrictions of the [CDA] by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute and enlarged waivers of sovereign immunity, as under the APA."). As a result, mere acceptance of a plaintiff's assertion of district court jurisdiction over such "due process"-style claims cannot be proper.

In such a case, a court should determine whether the underlying claim is essentially contractual or not. Failure to engage in this sort of artful pleading analysis would result in the effective evisceration of the jurisdictional bar of the CDA — a state of affairs Congress cannot have intended. I thus agree with the majority that such an inquiry is required over these sorts of due process claims, and that the claims at issue in the instant case are essentially contractual for these purposes.

Finally, regardless of how one characterizes the remedies requested by the truckers, the outcomes the truckers expect from their requested remedies could, as the majority notes, just as easily be gained from a reformation of the contracts at issue. This remedy is well within the power of the Court of Federal Claims. *See, e.g.*, *Beta Sys., Inc. v. United States*, 838 F.2d 1179 (Fed. Cir. 1988). As a result, and in contrast to the dissent, I would find that the fact that the specific remedies requested by the truckers are not within the Court of Federal Claims's power should not weigh against exclusive Court of Federal Claims jurisdiction.

Accordingly, I concur in affirming the judgment of the district court.

---
**DISSENT**
---

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. The sole issue presented in this case is whether the district court properly dismissed the truckers' claims for lack of subject matter jurisdiction under the Contract Disputes Act, 41 U.S.C. §§ 601-613. I am convinced that the district court erred, as has the majority, by misconstruing this Circuit's precedent. I therefore respectfully dissent.

I.

Given the review of the facts contained in the majority opinion, I see no need to restate them here. I do, however, take this opportunity to articulate briefly why I am compelled to dissent from the en banc court's disposition of this case. I begin by discussing the existing legal framework in this context, and then consider how the claims presented by the truckers should be decided consistent with the principles well-established within that framework.

A.

The United States Postal Service is an agency of the United States and thus enjoys sovereign immunity, except to the extent that it is waived. In 1970, Congress generally waived the postal service's immunity by enacting the Postal Reorganization Act, which allows the postal service "to sue and be sued in its official name." 39 U.S.C. § 401(1). The Act expressly gives the United States district courts "original but not exclusive jurisdiction over all actions brought by or against the Postal Service." 39 U.S.C. § 409(a); *see also* 28 U.S.C. § 1339 (providing an additional basis for federal district court jurisdiction over "any civil action arising under any Act of Congress relating to the postal service").

In 1978, Congress enacted the Contract Disputes Act, 41 U.S.C. §§ 601-613, which divests federal district courts of subject matter jurisdiction over some contractual disputes involving the federal government. *See, e.g., Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 891 (6th Cir. 1998) (holding that the Contract Disputes Act divests the district court of subject matter jurisdiction presumably granted by a "sue-and-be-sued" clause applicable to the Small Business Administration). The Contract Disputes Act provides that "[a]ll claims by a contractor against the government *relating to a contract* shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (emphasis added). The decision rendered by the contracting officer is then reviewable only by an agency board of contracting appeals, 41 U.S.C. § 606, or by the Court of Federal Claims, 41 U.S.C. § 609(a)(1).

Consequently, if claims against the postal service "relat[e] to a contract" under the Contract Disputes Act, then sovereign immunity has not been waived and the federal district court lacks subject matter jurisdiction to hear the claims. In such a case, the claims could only be brought before the Court of Federal Claims. If, however, the claims do not "relat[e] to a contract," sovereign immunity has been waived and the district court would presumably have jurisdiction.

Fortunately, this Court, along with our sister circuits, has given meaning to the vague "relat[e] to a contract" language contained in the Contract Disputes Act. In *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996), a panel of this Court, relying on the District of Columbia Circuit's decision in *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982), established the test for whether claims "relat[e] to a contract" under the Contract Disputes Act in this Circuit. There, we held that "for the [Contract Disputes Act] to apply, it must first be

determined that the claims asserted are *'essentially contractual' in nature*." *RMI Titanium Co.*, 78 F.3d at 1136 (quoting *Megapulse, Inc.*, 672 F.2d at 967) (emphasis added). In so holding, we adopted the following standard first articulated by the District of Columbia Circuit in *Megapulse*: "The classification of a particular action as one which is or is not 'at its essence' a contract action depends both [1] on the source of the rights upon which the plaintiff bases its claim, and [2] upon the type of relief sought (or appropriate)." *Id.* (quoting *Megapulse, Inc.*, 672 F.2d at 967). A number of our sister circuits have also adopted this so-called "rights and remedies" test announced in *Megapulse*. *See, e.g., Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375-76 (2d Cir. 1999); *United States v. J & E Salvage Co.*, 55 F.3d 985, 988-89 (4th Cir. 1995); *N. Star Alaska v. United States*, 14 F.3d 36, 37-38 (9th Cir. 1994).

The majority purports to follow *Megapulse*'s "rights and remedies" test in holding that the federal district court does not have jurisdiction over any of the truckers' claims. In my view, this application of the "rights and remedies" test not only denies federal government contractors their right to bring non-contractual claims in federal district court, but it also misconstrues and contradicts existing case law in this and other circuits, thus creating an unnecessary split in the circuits.

B.

In order to determine whether a claim is "essentially contractual," we are first required to consider "the rights upon which the plaintiff bases its claim," and, second, "the type of relief sought (or appropriate)." *RMI Titanium Co.*, 78 F.3d at 1136 (quoting *Megapulse, Inc.*, 672 F.2d at 967). A brief look at each allegation proves instructive in illustrating why all but one of the truckers' claims are essentially non-contractual.

The first prong of the "rights and remedies" test requires this Court to consider the nature of the rights upon which the plaintiffs base their claim. This inquiry does not focus on whether a contractual relationship exists between the parties, or whether the claims, as a whole, in some way involve contractual issues. *See, e.g., A.E. Finley & Assocs., Inc. v. United States*, 898 F.2d 1165, 1168 (6th Cir. 1990) (noting that "it would be improper to classify all claims raising contract issues as contract actions") (quoting *B.K. Instrument Co. v. United States*, 715 F.2d 713, 728 (2d Cir. 1983)). Instead, the relevant question is whether, despite the presence of an underlying contract between the parties, the rights asserted that form the basis of the claims are founded on the contract or on another ground, such as the Constitution or a federal statute.

Moreover, despite the majority's unsupported claims to the contrary, the relevant inquiry under this test does not consider the defendant's grounds for opposing the plaintiff's claim in determining whether the claim is "essentially contractual." In fact, the language of the "rights and remedies" test makes clear that the inquiry is focused on the "*rights* upon which the *plaintiff* bases its claim." *Id.* (emphasis added). The majority points to no legal support for its proposition that a defendant's rebuttal grounds are relevant to this inquiry, instead quoting language stating that a "plaintiff's title or characterization of its claims is not controlling," and that "[a] plaintiff may not avoid the jurisdictional bar of the [Contract Disputes Act] merely by alleging violations of regulatory or statutory provisions." *B & B Trucking, Inc. v. United States Postal Serv.*, No. 02-1562, slip op. at 3 (6th Cir. 2005) (en banc opinion) (quoting *RMI Titanium Co.*, 78 F.3d at 1136) (internal quotation marks omitted). As the *Megapulse* court stated in establishing the applicable "rights and remedies" test:

> Contract issues may arise in various types of cases where the action itself is not founded on a contract. A license, for example, may be raised as a defense in an action for trespass, or a purchase contract may be raised to counter an action for conversion. But the mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action

based on trespass or conversion into one on the contract and deprive the court of jurisdiction it might otherwise have.

672 F.2d at 968; *see also Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 4 (D.C. Cir. 1998) (applying *Megapulse*'s "rights and remedies" test in concluding that the mere existence of contractual rebuttal points does not render a claim essentially contractual under the Contract Disputes Act).  Thus, existing case law establishes that a claim does not become "essentially contractual" merely because the defendant raises the existence of a contract as a defense.

The second prong of the "rights and remedies" test requires this Court to consider the type of relief that the plaintiff is seeking, or the type of relief that is appropriate given the plaintiff's claim.  The Court of Federal Claims generally does not have the equitable powers to grant prospective relief, and, thus, any claim for which such relief is suitable is more appropriately brought before the federal district court.  *See id.* (concluding that plaintiffs' cause of action against the General Services Administration seeking only equitable relief, rather than damages for breach of contract, was not at its essence a contract action).

## II.

Applying these standards of existing precedent to the instant case, it becomes clear that the majority's reasoning in depriving the truckers access to the federal district court is misguided.  I briefly address each of the truckers' causes of action in turn.

## A.

The truckers' first cause of action consists of a number of Fifth Amendment claims alleging deprivation of liberty and property interests without due process of law.  In short, the truckers assert three types of Fifth Amendment claims.  First, they claim a violation of their property right to control use of their fuel tanks.  Second, they assert a claim based on their alleged freedom to contract with fuel suppliers of their own choosing.  Finally, the truckers allege a variety of liberty interests to control the operation of their businesses.

These Fifth Amendment claims are essentially non-contractual.  The alleged right to protect property from being entered and used, which is asserted by the truckers here, is clearly not based on any contract.  Rather, the source of the rights upon which the plaintiffs base their claim is the Fifth Amendment and, more specifically, the truckers' title to their property.  Similarly, the truckers' claims regarding their freedom to contract with fuel suppliers of their own choosing are not based on any contractual provision, but are also based on their protected constitutional rights.

The majority concludes that "whether the truckers have a right to control their fuel supply depends upon whether their [transportation] *contracts* with [the postal service] afford such a right" in light of Amendment 3, which appears to require the truckers to comply with the fuel plan agreed to between the postal service and the fuel suppliers.  *B & B Trucking, Inc.*, No. 02-1562, slip op. at 3 (en banc opinion) (emphasis in original).  In so holding, however, the majority mistakenly assumes that the source of the rights upon which the truckers base their claims is the transportation contract that each trucker has with the postal service to transport mail.  As noted above, the truckers' complaint clarifies that the source of the rights upon which they base their claims is not any contract between the truckers and the postal service, but rather their property rights protected independently of their transportation contracts.  In similar cases, courts have refused to conclude, as the majority seems to do here, that non-contractual claims somehow automatically become "essentially contractual"  for jurisdictional purposes under the Contract Disputes Act if the parties are in a contractual relationship or if some contractual issue would likely arise in rebuttal.  *See, e.g., Commercial Drapery Contractors, Inc.*, 133 F.3d at 4 (holding that a business's claims that the

federal government's General Service Administration violated the Constitution, government procurement statutes, and federal regulations were not "essentially contractual" merely because the parties had entered into a contract and its termination provision was relevant to the Administration's defense); *Megapulse*, 672 F.2d at 969 (concluding that a government contractor's suit against the Coast Guard to prevent release of proprietary data was not "essentially contractual" despite the existence of relevant contractual issues) ("[The contractor's position] is ultimately based, not on breach of contract, but on an alleged governmental infringement of property rights and violation of the Trade Secrets Act. It is actually the Government, and not [the contractor], which is relying on the contract . . . .").

The only claim asserted here by the truckers that is based on contractual rights is the claim that the postal service interfered with the performance of the truckers' transportation contracts. The contracts on which this claim is based are, in fact, the original transportation contracts between the truckers and the postal service. The truckers seek enforcement of the pre-Amendment 3 version of those contracts. Consequently, because the rights asserted in this claim are based on contract, then jurisdiction of this claim is properly limited to the Court of Federal Claims. This is in stark contrast to the other Fifth Amendment claims, each of which is, for the reasons stated above, properly considered non-contractual given the source of the rights upon which the truckers base those claims.

B.

The truckers' second cause of action claims that the postal service has violated its own regulations, which allegedly prohibit the postal service from telling a contractor how or when to purchase supplies and allow contractors to purchase fuel from any source at the contractor's discretion. Despite the existence of transportation contracts between the postal service and the truckers, these allegations are simply not based upon contractual rights; rather, they are based upon rights established in federal government regulations. As such, they are not "essentially contractual" under the *Megapulse* standard discussed above and the district court has subject matter jurisdiction to hear these claims.

C.

The truckers' final cause of action is based on their claim of "arbitrary and capricious" agency action. In short, the truckers allege that the postal service obligated the truckers to the fuel supply contracts between the postal service and the fuel suppliers. The truckers claim that the fuel supply contracts created third-party obligations, which they argue the postal service does not have statutory authority to create, and are therefore "arbitrary and capricious" and violate due process.

In my view, there is simply nothing about this claim that relates to the contractual relationship between the truckers and the postal service. Granted, the truckers' transportation contracts with the postal service may be relevant on the merits, particularly in the postal service's rebuttal of the alleged "arbitrary and capricious" action. However, as noted above, the mere existence of contractual issues, specifically those not related to the rights upon which the plaintiffs base their claim, does not insulate the postal service from suit in federal district court. Thus, because the claims presented here in the truckers' final cause of action are based upon rights not guaranteed by their transportation contracts with the postal service, but, rather, upon federal guarantees of due process, the district court properly had subject matter jurisdiction to hear those claims.

III.

While a review of the rights upon which the truckers base their claims strongly suggests that all but one of their claims are non-contractual, we are still required to address the second prong of *Megapulse*'s "rights and remedies" test, which involves a consideration of the type of relief sought or appropriate. *See RMI Titanium Co.*, 78 F.3d at 1136 (quoting *Megapulse, Inc.*, 672 F.2d at 967).

In the present case, the truckers are seeking declaratory and injunctive relief, both of which are forms of non-contractual prospective relief. Moreover, it appears that this prospective relief is the appropriate form of relief given the fact that the truckers are neither claiming breach of contract nor seeking monetary damages against the postal service. *See, e.g., Commercial Drapery Contractors, Inc.*, 133 F.3d at 4 (holding that plaintiffs' cause of action seeking only equitable relief rather than damages for breach of contract was not at its essence a contract action).

Furthermore, despite the majority's conclusions to the contrary, the truckers' claims are not accurately characterized as seeking specific performance of any contract. First, the truckers are not trying to seek performance of their transportation contracts with the postal service. In fact, the federal government is the party that is relying on the transportation contracts, particularly Amendment 3, to defend against the truckers' claims. Consequently, the truckers' claims simply cannot be framed as seeking specific performance of their transportation contracts. Second, the majority errs in concluding that "[t]he truckers, in effect, seek specific performance of the contracts as they stood before any amendment." *B & B Trucking, Inc.*, No. 02-1562, slip op. at 3 (en banc opinion). Importantly, the pre-amended contracts contained no language guaranteeing truckers' rights to choose their own fuel suppliers. It is therefore inaccurate to view the plaintiffs' claims as merely seeking specific performance of their pre-amended contracts when, in fact, the appropriate relief for their claims goes beyond the rights provided in the pre-amended contracts. Thus, the non-contractual relief appropriate for plaintiffs' claims further supports the conclusion that the federal district court has subject matter jurisdiction over these claims.

IV.

In sum, I dissent from the Court's decision in this case. In my view, the majority incorrectly concludes that all of the truckers' claims are essentially contractual and thus cannot be brought in federal district court. Under the "rights and remedies" test previously adopted by this Court, the plaintiffs' claims all seek non-contractual remedies, and all but one—the alleged liberty right to perform the transportation contracts—are based on non-contractual rights. Consequently, the federal district court is not absolved of jurisdiction over these claims. I therefore respectfully dissent from the majority's decision, which wrongfully denies the truckers, as well as all others similarly situated who contract with the federal government either directly or directly, access to bring non-contractual claims before the federal district court.